UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                                                  Case No. 21-20099

DeMario Morris,                                      Honorable Sean F. Cox

      Defendant.

_____/

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS**

      In this Criminal Case, Defendant DeMario Morris ("Defendant") is charged with one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841 (Count I); one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count II); and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count III). (ECF No. 12). The matter is currently before Court on Defendant's Motion to Suppress all evidence obtained as a result of a search of the vehicle Defendant was driving on December 8, 2020. The motion was fully briefed, and a hearing was held on September 17, 2021.

      For the following reasons, the Court finds that the search was lawful and DENIES Defendant's motion to suppress.

**PROCEDURAL BACKGROUND**

1

On February 10, 2021, a grand jury indicted Defendant for: (1) possession with intent to distribute at least 50 grams of methamphetamine; (2) possession of a firearm in furtherance of a drug trafficking crime; and (3) felon in possession of a firearm. (ECF No. 12).

On May 21, 2021, Defendant filed a motion to suppress the evidence seized from the vehicle, claiming that officers conducted an unlawful inventory search. (ECF No. 19). Defendant argues that the search of the vehicle violated the Fourth Amendment. (Def's Br., ECF No. 19, at PageID 59). The Government responded. (ECF No. 24). The Court held an evidentiary hearing on September 17, 2021.

At the hearing, the Government called two witnesses: (1) Detroit Police Department ("DPD") Officer Ryan Shrum ("Shrum") and (2) DPD Officer Zachary Biggs ("Biggs"). The Government also entered six exhibits: (1) Shrum's Body Camera Footage; (2) DPD Incident Report; (3) Bigg's Body Camera Footage; (4) Vehicle Impound Report (DPD Form 406); (5) DPD Towing & Impound Procedures 204.4-4 (Impounding Vehicles); (6) DPD Towing & Impound Procedures 204.4-11 (Inventorying Vehicles).

Now, having heard and observed the witnesses who testified at the evidentiary hearing, allowing for the Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

On December 8, 2021, Detroit Police Officers, including Shrum, were dispatched to the area of Telegraph and West Seven Mile to investigate a white van that had potentially been

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

involved in several accidents and was riding on three wheels and one rim. While traveling northbound on Telegraph, Shrum observed, through his rearview mirror, a white van cause an accident in the intersection of West Seven Mile and Telegraph. Shrum turned around to investigate the incident.

At the accident scene, Shrum observed the two vehicles involved: a Ford sedan and the white van. Shrum approached the white van, he observed a sole occupant, who was later identified as Defendant. Shrum also observed that the white van had sustained heavy damage to the front end: the front left tire was missing, the air bags had deployed, the vehicle was visibly smoking, and it was in the roadway blocking traffic.

As Shrum approached the white van, he observed Defendant aggressively reaching toward the passenger seat. Shrum pulled out his firearm because he was concerned for his safety. Shrum ordered Defendant to exit the vehicle multiple times, but Defendant did not comply. Once Shrum was next to the driver's side door of the white van, he continued to order Defendant to get out of vehicle, and Defendant continued to not comply. The driver door was malfunctioning, and Shrum could not open it. While Shrum could see Defendant's hands, Defendant continued to lean toward the passenger seat. Shrum attempted to gain control of Defendant's arms by handcuffing him. In response, Defendant rolled up the window on Shrum's arm.

Shrum called other police units for backup. When backup arrived, Shrum continued to order Defendant to get out of the car, and Defendant did not comply. Shrum directed Biggs to go to the other side of the van because he did not know what Defendant had with him in the van. Eventually, officers were able to remove Defendant from the van by pulling him through the driver's side window. Defendant was then taken into custody.

Witnesses at the scene reported that Defendant had caused – and fled from – several accidents. Officers ran Defendant's driver's license, license plate, and vehicle information. Defendant did not have valid insurance. At the scene, officers believed Defendant was high on drugs based on his behavior. Shrum believed that Defendant had a gun in the car based on Defendant's behavior and gestures. Shrum did not see any visible injuries on Defendant, nor did Defendant report any injuries to any officers at the scene.

Officers searched the van. Officers located a Carhartt brand fanny pack style bag on the floorboard in front of the driver's seat. Inside was a grocery bag that contained a clear plastic bag filled with 454.8 grams of methamphetamine. Officers recovered a black Smith and Wesson M&P .40 caliber firearm, loaded with 10 rounds, from an open tool bag near the center front console.

Defendant was placed under arrest for Fleeing the Scene of an Accident Causing Injury, Reckless Driving, Resisting Arrest, Carrying a Concealed Weapon, and Narcotics Possession.

The officers impounded Defendant's vehicle because it was disabled in a crash on a public road and because Defendant was placed under arrest. Officer Anthonee Butler ("Butler") filled out a DPD Vehicle Impound Report ("Impound Report") for Defendant's vehicle. The Impound Report included details on the condition of the car, which indicated that it had sustained front end damage.

Shrum filled out an Incident/Investigation Report ("Incident Report"), which lists the items that the officers recovered during the search of the vehicle: a grocery bag and knotted plastic bag containing suspected methamphetamine; a tan and black Carhartt bag; a black and gold colored Apple iPhone, recovered from the driver seat of the vehicle; a pink and white colored Apple

iPhone, recovered from the floor of the vehicle; a loaded black firearm, recovered from in between the passenger and driver's seat; and one drug/narcotic equipment bag.

## CONCLUSIONS OF LAW

Defendants argue that the search of the vehicle violated the Fourth Amendment and that all evidence obtained during the search should be suppressed. (Def's Br., at PageID 59). The Government argues that (1) the officers had probable cause to believe that Defendant had committed multiple violations of Michigan law; and (2) the search of the vehicle was lawful because the evidence was recovered during a lawful inventory search and the warrantless search of the vehicle was lawful under the automobile exception. (Gov's Br., at PageID 95).

### I. The Traffic Stop

While Defendant does not challenge the lawfulness of a traffic stop, the Court notes that the officers acted lawfully when they ordered Defendant to exit the vehicle. The police may pull over a vehicle when they have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). During a stop for a traffic violation, "police may instruct the driver or occupant to exit the vehicle." *See United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (holding that during a traffic stop, an officer may request that the driver exit the vehicle). The Supreme Court has recognized "the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Mimms*, 434 U.S. at 110.

Here, Defendant was not pulled over in a traffic stop. Rather, Defendant had just been in a traffic accident, and he was in his vehicle, which was stationary and heavily damaged on the roadway. Before Shrum arrived at the accident scene, dispatch told him that a vehicle riding on

three wheels and a rim had been involved in several accidents and had been driving erratically in the area. While Shrum was patrolling the area, he saw – through his rearview mirror – a white van disregard the traffic signal and barrel through an intersection and hit another vehicle. Once at the scene, Shrum noticed that Defendant's vehicle was consistent with the description provided by dispatch: a white van riding on three wheels and one rim. At the scene, witnesses told officers that Defendant had caused and fled from several accidents and was driving recklessly.

Based on this information, officers had probable cause to believe that Defendant had violated several Michigan laws, including Fleeing the Scene of an Accident Causing Injury, in violation of MCL § 257.617(a); Fleeing the Scene of an Accident Causing Damage to Vehicles, in violation of MCL § 257.618; and Reckless Driving, in violation of MCL § 257.626. Fleeing the Scene of an Accident Causing Injury and Reckless Driving are arrestable offenses under Michigan law. See MCL § 257.617(a). Therefore, officers acted lawfully when they told Defendant to exit the van and detained him.

## II. The Search

"Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Here, the Government argues that the search of the vehicle without a warrant was lawful under the Fourth Amendment and the evidence is admissible because: (1) the search was lawful under the automobile exception, and (1) it was recovered during a lawful inventory search. (Def's Br., at PageID 109-117).

## 1. The Automobile Exception

Under the automobile exception, an officer may "perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Alexander*, 954 F.3d 910, 917 (6th Cir. 2020) (quoting *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (citations omitted).

Here, the Government asserts that the officers had such probable cause to search the entire vehicle due to the totality of facts and circumstances known to the officers at the scene. (Pl's Br., at PageID 115). Specifically, the Government notes that the officers knew from the dispatch report that Defendant had been involved in – and fled from – approximately six traffic accidents before Shrum saw him crash into another vehicle and disable his van. At the scene, witnesses corroborated the dispatch report and told the officers that Defendant had been involved in – and fled from – several accidents prior to the final accident observed by Shrum. When Shrum approached the van, he said he saw Defendant aggressively reaching towards the passenger seat, and Defendant failed to comply with Shrum's commands to exit the vehicle. Defendant also tried to resist Shrum's efforts to handcuff him by rolling up the windows of the van. Defendant was slurring his words. From all this, the Government argues that the officers believed that Defendant was high on drugs and attempting to avoid discovery of drugs and/or a gun in the van.

However, the Court need not determine whether the automobile exception applies because it is clear that the search was lawful under the inventory search exception.

**2. Inventory Search**

7

"Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Wren v. United States*, 517 U.S. 806, 811 n.1 (1996). "A vehicle is lawfully seized and, thus, subject to inventory search if it is lawfully impounded." *United States v. Snoddy*, 976 F.3d 630, 634 (6th Cir. 2020) (citing *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012)).

When officers exercise their discretion to impound a vehicle, they must do so "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Jackson*, 682 F.3d at 454. "In order to be deemed valid, an inventory search may not be undertaken 'for purposes of investigation,' and it must be conducted 'according to standard police procedures.'" *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 2001)). "The search is unconstitutional if the evidence establishes that the police acted in bad faith or for the sole purpose of investigation in conducting an inventory search." *Snoddy*, 976 F.3d at 634. However, "the mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search." *Smith*, 510 F.3d at 651.

Here, the Government argues that the search of the van was a valid inventory search in accordance with the Detroit Police Department's Impound Policy ("Impound Policy"). (Def's Br. at PageID 109). The Impound Policy authorizes officers to "provide for the immediate removal of a vehicle from public or private property" in several situations, including:

8

a. If the vehicle is in such a condition that the continued operation of the vehicle on the highway would constitute an immediate hazard to the public;

b. If the vehicle is parked or standing on the highway in a manner that may create an immediate public hazard or an obstruction of traffic;

…

k. If the vehicle has been involved in a traffic crash and cannot be safely operated from the scene of the crash.

(ECF No. 24-5, at PageID 141-142). Once the officers decide to impound a vehicle, the Impound Policy requires them to conduct an inventory search. (ECF No. 26-6, PageID 144). Specifically, the Impound Policy states, "[t]he inventory shall include an accounting of the vehicle's accessories. The results of the inventory shall be documented on the reverse side of the Impounded Vehicle Card." (ECF No. 24-6, PageID 144). The Impound Policy further provides, "[i]tems of unusual value which will be held to protect owner's interest or evidence seized from the vehicle shall be processed as evidence, entered into TRACKER, and included in the incident report." (ECF No. 24-6, PageID 144). The Government argues that the Vehicle Impound Report and Incident Report show that the officers complied with the Impound Policy. (Pl's Br., at PageID 112).

Defendant argues that the inventory search was a ruse and that "an inventory simply did not occur despite the government's claim that one did." (Def's Br., at PageID 155). Defendant emphasizes that the "List Items from Inventory" section of the Vehicle Impound Report is blank, despite the fact that the body camera footage from the officers shows commercial equipment (a piece of power equipment with an electrical cord and a drain cleaning cable) in the van. (Def's Br., at PageID 155-156).

9

However, the main "problem for [Defendant] is that regardless of [the officers']
motivations or beliefs, [the officers were] going to have the car towed no matter what." *Snoddy*,
976 F.3d at 636. Defendant was the sole occupant of the vehicle. The vehicle had sustained such
heavy front damage that it was undrivable: the front left wheel was missing, the air bags had
deployed, the front end was smashed-in, the vehicle was actively smoking at the scene, and the
driver door was malfunctioning. The vehicle was in the roadway, obstructing traffic. It could have
been "stolen, vandalized, or hit by another vehicle." *Id*. "The Fourth Amendment permits
impoundment decisions and inventory searches that are objectively justifiable . . . regardless of an
officer's subjective intent." *Id*. (citing *Kimes*, 246 F.3d at 805). In these circumstances where the
sole occupant of the vehicle was under arrest and the vehicle was an undrivable hazard on the
roadway, impounding the vehicle reasonably could be seen as objectively justifiable.

Furthermore, the inventory searches need not "be conducted in a totally mechanical 'all or
nothing' fashion." *U.S. v. Hockenberry*, 730 F.3d 645, 659 (2013) (citing *Florida v. Wells*, 495
U.S. 1, 4 (1990)). "When considering the comprehensiveness of an inventory list, 'an officer's use
of discretion in implementing agency guidelines regarding the conduct of an inventory search does
not necessarily violate the Fourth Amendment.'" *Hockenberry*, 730 F.3d at 659 (citing *Kimes*, 246
F.3d at 805). In *Kimes*, the Sixth Circuit specifically held that a standardized policy of "listing only
'valuable items is not impermissible, and neither is a measure of flexibility regarding the
implementation of that policy." 246 F.3d at 805. "The post-discovery listing of items discovered
in a search, moreover, has no pertinent connection to the discovery itself." *Id*.

Therefore, the officers' decision to list the items recovered during the inventory search in
the Incident Report and not on the Impound Report does not invalidate the inventory search.

Similarly, the officers' decision to not list the commercial equipment in the van as items of value on the inventory list falls under the permissible "measure of flexibility" afforded to officers while conducting inventory searches. *Id*.

### CONCLUSION

For the reasons described above, the Court finds that the search of the vehicle was lawful and **DENIES** Defendant's motion to suppress.

**IT IS SO ORDERED.**

Dated:  September 24, 2021                                         s/Sean F. Cox_____
                                                                                Sean F. Cox
                                                                                U. S. District Judge

11